UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: CF Graphics, Inc., <br>     Debtor. | Bankruptcy No. 06 B 00459 <br> Adversary No. 07 A 00270 <br> Chapter 7 <br> Judge Manuel Barbosa |
| Roy Safanda, <br>     Plaintiff(s), <br> v. <br> Charles Foca, <br> Theresa Foca, <br> and Michael Pahl, <br>     Defendant(s). | |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56 made applicable by Fed. R. Bankr. P. 7056 and 9014, filed by Roy Safanda, Chapter 7 Trustee ("Trustee") and defendant Michael Pahl ("Pahl") relating to Trustee's adversary complaint for recovery of pre-petition transfers of debtor CF Graphic's ("Debtor") property to Pahl, pursuant to 11 U.S.C. § 544(b)(1) (2006), for alleged violations of the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/5(a)(1), 160/5(a)(2), 160/6(a), and 160/6(b). For the reasons set forth herein, the Court grants Pahl's motion for summary judgment and denies Trustee's motion for summary judgment.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 (2006) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001(4), (6). It is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(F), (H), (O) (2006).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from pleadings and other papers filed with this court as well as from records to which the parties refer. Many of the facts alleged have been admitted in answer and are, therefore, uncontested.

On January 19, 2006, creditors Diamond Web Printing, LLC ("Diamond Web"), GH Printing Co., Inc. ("GH Printing"), and Digital Graphic Solutions, Inc. filed an involuntary petition for Chapter 7 relief against the debtor C.F. Graphics, Inc. ("Debtor"), pursuant to 11 U.S.C. § 303, and, on May 4, 2006, the Court entered an order for relief under Chapter 7. Thereafter, the Chapter 7 trustee Roy Safanda ("Trustee") was appointed and qualified as the trustee for the Debtor's estate. Pursuant to 11 U.S.C. § 704(a)(4), the Trustee investigated the financial affairs of Debtor, including allegations of misconduct and actual and potential fraud by the Debtor's officers and directors, such as Charles Foca, Sr. ("Foca"). This investigation revealed, among other things, several transfers of Debtor's property that are subject to avoidance and recovery under Chapter 5 of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1.

On April 18, 2007, the Trustee filed adversary proceeding number 07-A-00270 for the recovery of pre-petition transfers of Debtor's property to defendants Charles Foca, Sr., Theresa Foca and Michael Pahl. On October 6, 2008, the Trustee filed a motion to approve compromise or settlement per Rule 9019 with Theresa Foca, and, in an order dated October 23, 2008, the Court granted Trustee's motion to compromise. The Trustee filed a motion for partial summary judgment against defendant Charles Foca on August 15, 2008, and, in an order dated November 6, 2008, the Court granted partial summary judgment in favor of Trustee and against defendant Charles Foca, Sr. The remaining unresolved claim in this adversary proceeding is against

defendant Michael Pahl and seeks to avoid transfers from Debtor to Michael Pahl totalling $21,100.00.

On November 26, 2008, defendant Michael Pahl filed a motion for summary judgment against the Trustee, pursuant to Fed. R. Civ. P. 56 incorporated by Fed. R. Bankr. P. 7056, and alleged that the four checks from Debtor to Pahl totalling $21,100.00 were proper transfers and neither fraudulent, nor avoidable, pursuant to 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. 160/1. On January 2, 2009, Trustee filed a memorandum in opposition to Pahl's motion for summary judgment as well as a cross-motion for summary judgment, pursuant to Fed. R. Civ. P. 56 incorporated by Fed. R. Bankr. P. 7056, that alleged that the four checks from Debtor to Pahl totalling $21,100.00 were improper transfers, fraudulent, and avoidable, pursuant to 11 U.S.C. § 544(b)(1) and in violation of the Illinois UFTA under 740 Ill. Comp. Stat. 160/5(a)(1), 160/5(a)(2), 160/6(a), and 160/6(b). On January 22, 2009, Pahl filed a reply in support of his summary judgment motion that responded to Trustee's opposition memorandum. On March 12, 2009, Pahl filed a response to Trustee's cross-motion for summary judgment.

A little background is in order. Creditor Diamond Web, a printing company, employed Gregg Herlin as its sole shareholder, director and officer. In addition, Diamond Web employed defendant Michael Pahl ("Pahl") from May 19, 1997 through February 24, 2004. Pahl rose from pre-pressman to pre-pressman supervisor to general manager at Diamond Web where he, inter alia, quoted jobs for Diamond Web's customers. Diamond Web also employed Charles Foca, Sr. ("Foca") as a pre-pressman from 2000 to October 16, 2003.

On July 26, 2002, with Herlin's consent, Foca, as sole shareholder, director and officer, formed and incorporated debtor C.F. Graphics, Inc. ("Debtor"). Debtor acted as a print broker engaged in the printing industry. Debtor partnered with Diamond Web and GH Printing to

obtain printing supply materials, personnel and machinery to produce printing services for Debtor's resale to third party customers. Upon completing printing services, Diamond Web and GH Printing would invoice Debtor and become due by Debtor. Thus, Debtor acted as a printing broker to find printing jobs, which Foca would have performed by Diamond Web or GH Printing, another company owned by Herlin.

Debtor hired Pahl as an independent contractor to provide technical assistance, such as billing, invoicing, shipping, and ledgers, and quote print jobs for Debtor's customers. Pahl was not a shareholder, officer, director or owner of Debtor. Moreover, Pahl was not Foca's relative, never had any legal partnership with Foca, and never had any business ventures with Foca. Pahl performed these services on his own time. When Pahl worked for Debtor, Foca and Pahl met at Pahl's house during the day, at night and on the weekend so that Pahl could provide specifications and costs to Foca for Debtor's jobs. While no specific payment arrangement existed with Pahl, Debtor paid Pahl to compensate him for his efforts to "nurture and grow [Debtor]." Debtor's bank records indicate that Debtor issued the following checks to Pahl:

| Check Date | - | Amount: |
|---|---|---|
| May 2, 2003 | - | $10,000.00 |
| July 30, 2003 | - | $2,000.00 |
| August 1, 2003 | - | $100.00 |
| August 28, 2003 | - | $9,000.00 |
| TOTAL | - | $21,100.00 |

Debtor paid Pahl $10,000 on May 2, 2003 for, inter alia, setting up Debtor's business. Prior to Debtor's May 2, 2003 payment, Debtor deposited $97,494.50 into its bank account. Debtor also deposited $20,713.64 prior to the $2000 payment to Pahl on July 20, 2003 and $100 payment to Pahl on August 1, 2003. In addition, Debtor deposited $46,458.49 before the $9000 payment to Pahl on August 28, 2003. Pahl received a 1099-Misc income statement from Debtor for all payments made to Pahl in 2003.

Between September 22, 2003 and November 10, 2003, Debtor submitted purchase orders to Diamond Web who then printed, shipped and invoiced finished products as ordered to Debtor totalling $64,427.87. Debtor never paid these invoices.

On November 13, 2003, Debtor submitted its largest purchase order to Diamond Web that totalled $135,665.95 and included 3,200,000 tackle booklets to be distributed directly to Debtor's client, Plano Molding. As requested, Diamond Web printed and shipped the tackle booklets to Plano Molding, and, on December 15, 2003, sent the corresponding $135,665.95 to Debtor, who never paid. According to Foca, Foca and Herlin suffered a "falling out" in mid-December 2003 and Debtor failed to pay the invoice. At that time, Debtor owed $200,093.82 to Diamond Web and $1900.00 to GH Printing. For fiscal year 2003, Debtor reported gross profits of $248,230 and ordinary income of $76,251.

Debtor paid $31,265 to Theresa Foca and $219,652.04 to Charles Foca, Sr. between November 2003 and February 2004. On February 18, 2004, after customers paid Debtor for all printing jobs performed by Diamond Web, Foca responded to Diamond Web's payment demands and stated to Herlin that "sometimes life isn't fair," and that Foca had decided to not pay Debtor's debt to Diamond Web.

Thus, Debtor was indebted to Diamond Web and GH Printing for over $200,000, while Foca cashed Diamond Web and GH Printing checks for $209,216.70. Foca testified that he cashed the checks knowing that the invoices to Diamond Web and GH Printing were due, but he had no other source of income to pay these invoices.

## DISCUSSION

The issue before the Court is whether Trustee may recover Debtor's pre-petition transfers to Pahl, pursuant to 11 U.S.C. § 544(b)(1) (2006), for alleged violations of the Illinois Uniform

Fraudulent Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/5(a)(1), 160/5(a)(2), 160/6(a), and 160/6(b).

**Standard of Review**

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 is also applicable to contested motions through Federal Rule of Bankruptcy Procedure 9014. See In re Vastag, 345 B.R. 882, 884 (Bankr. N.D. Ill. 2006). Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). "The primary purpose of a grant of summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir. 1987) (quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Sav. & Loan Ass'n of Indianapolis, 806 F.2d 146, 149 (7th Cir. 1986)).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. Anderson, 477 U.S. at 248; Matsushita, 475 U.S. at 585–86; Celotex, 477 U.S. at 322.

All reasonable inferences drawn from the underlying facts must be viewed in a light most

favorable to the party opposing the motion. Anderson, 477 U.S. at 255; Peerman v. Georgia-Pac. Corp., 35 F.3d 284, 286 (7th Cir. 1994); Cuddington v. N. Ind. Pub. Serv. Co., 33 F.3d 813, 815 (7th Cir. 1994). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. Anderson, 477 U.S. at 248; Frey v. Fraser Yachts, 29 F.3d 1153, 1156 (7th Cir. 1994). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

The parties have filed cross-motions for summary judgment. The motions must be ruled on independently and must be denied if there are genuine issues of material fact. Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.), Nos. 04 B 31669, 07 A 00838, 2008 WL 4767434, at *8 (Bankr. N.D. Ill. Oct. 30, 2008) (citing ITT Indus. Credit Co. v. D.S. Am., Inc., 674 F. Supp. 1330, 1331 (N.D. Ill. 1987)). Cross-motions for summary judgment do not require the court to decide the case on the motions; the court can deny both motions if both parties have failed to meet the burden of establishing that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. Id. (citing ITT Indus. Credit Co. v. D.S. Am., Inc., 674 F. Supp. at 1331). In addition, cross-motions for summary judgment do not warrant the granting of summary judgment where the decision of a question of law depends upon inquiry into surrounding facts and circumstances, and in such instance, summary judgment should be refused until such facts and circumstances have been sufficiently developed to enable the court to

be reasonably certain that it is making the correct determination on the question of law. Id. (citing Nugent v. United States, 136 F. Supp. 875, 878 (N.D. Ill. 1955)). Thus, on their respective motions, Pahl and Trustee each bear the burden of demonstrating the absence of material factual issues and establishing that judgment should be entered in its favor as a matter of law. Lindemann v. Mobil Oil Corp., 141 F.3d 290, 294 (7th Cir. 1998).

Local Rule 7056-1 of the Bankruptcy Rules adopted for the Northern District of Illinois requires the party moving for summary judgment to file a detailed statement of material facts that the movant believes are uncontested. Local Bankr. R. 7056-1. Under Local Bankr. R. 7056-1(B), the statement of facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion."

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond to the movant's Local Rule 7056-1 statement paragraph by paragraph and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr. R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr. R. 7056-2(A)(2)(a).

**Avoidance of Debtor's Transfers – 11 U.S.C. § 544(b)(1)**

Pursuant to 11 U.S.C. § 544(b)(1), the trustee can avoid any transaction of the debtor that would be voidable by any actual unsecured creditor under state law. In re Image Worldwide, Ltd., 139 F.3d 574, 576-77 (7th Cir. 1998); Grochocinski v. Zeigler (In re Zeigler), 320 B.R.

362, 371 (Bankr. N.D. Ill. 2005). Section 544(b)(1) provides, in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). The parties do not dispute that Illinois law applies. Thus, pursuant to 11 U.S.C. § 544(b)(1), Trustee charged that Debtor's transfers to Pahl were fraudulent transfers in violation of the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/5(a)(1), 160/5(a)(2), 160/6(a), and 160/6(b). "Because the provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA." Zeigler, 320 B.R. at 372 (citing Levit v. Spatz (In re Spatz), 222 B.R. 157, 164 (N.D. Ill. 1998); In re Image Worldwide, Ltd., 139 F.3d at 577).

### A. 740 Ill. Comp. Stat. 160/5(a)(1) ("Fraud-in-fact"); 740 Ill. Comp. Stat. 160/5(b) ("Badges of Fraud")

The first applicable state law, 740 Ill. Comp. Stat. 160/5(a)(1), under the Illinois UFTA, provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

740 Ill. Comp. Stat. 160/5(a)(1).

Under "fraud in fact" or actual fraud, pursuant to § 5(a)(1) of the UFTA, the moving party must prove that there was a specific intent to hinder, delay or defraud. Zeigler, 320 B.R. at 372 (citing Lindholm v. Holtz, 581 N.E.2d 860, 863 (Ill. App. Ct. 1991)). Furthermore, the movant has the burden of proving all elements of actual fraud under Illinois law by clear and convincing evidence. Id. (citing Krol v. Wilcek (In re H. King & Assocs.), 295 B.R. 246, 287

(Bankr. N.D. Ill. 2003)).

The UFTA sets forth several factors under 740 Ill. Comp. Stat. 160/5(b)(1)-(11), known as the "badges of fraud," from which an inference of fraudulent intent may be drawn. Id. at 373. Specifically, the Illinois UFTA sets forth eleven "badges of fraud," under 740 Ill. Comp. Stat. 160/5(b)(1)-(11), which provides:

> (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 Ill. Comp. Stat. 160/5(b)(1)-(11). When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of fraud. Zeigler, 320 B.R. at 373 (citing Steel Co. v. Morgan Marshall Indus., Inc., 662 N.E.2d 595, 602 (Ill. App. Ct. 1996)). Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast." Id. (quoting Fed. R. Evid. 301). The presence of seven badges of fraud has been held sufficient to raise a

presumption of fraudulent intent. Id. (citing Berland v. Mussa (In re Mussa), 215 B.R. 158, 170 (Bankr. N.D. Ill. 1997)).

Trustee has not met his burden of proving all elements of actual fraud under Illinois law by clear and convincing evidence. The "badges of fraud" are not present in sufficient number to give rise to an inference or presumption of fraud. First, Pahl was not an insider since he was never a shareholder, officer, director or owner of Debtor. Moreover, Pahl is not Foca's relative, never had any legal partnership with Foca, and never had any business ventures with Foca. Furthermore, Pahl was an independent contractor of Debtor and received a 1099-MISC income statement from Debtor for all payments made to Pahl in 2003.

Second, there is no indication that Debtor or Foca remained in control of the money transferred to Pahl. Third, no transfers were concealed. Fourth, there is no indication that Debtor had been threatened to be sued before the transfers. Instead, over six months after Debtor's last payment to Pahl, Diamond Web demanded payment for its services in performing print jobs for Debtor. Fifth, there is no indication that the May 2003 to August 2003 payments to Pahl represented substantially all of Debtor's assets. For fiscal year 2003, Debtor reported gross profits of $248,230 and ordinary income of $76,251. In addition, Debtor routinely deposited sufficient funds prior to paying any of Pahl's services in May, July and August 2003. Moreover, Debtor's debts to Diamond Web did not occur until September 2003 through November 2003.

Sixth, while Debtor may have absconded with funds in February 2004, these actions occurred after Debtor's last payment to Pahl in August 2003. Specifically, after a "falling out" between Herlin and Foca, Debtor paid $31,265 to Theresa Foca and $219,652.04 to Charles Foca, Sr. between November 2003 and February 2004. Furthermore, Foca stated to Herlin that "sometimes life isn't fair," and that Foca had decided to not pay Debtor's debt to Diamond Web.

Seven, as stated, Debtor removed assets between November 2003 and February 2004, but these actions did not occur during the transfers to Pahl. Eight, there is no evidence that Pahl's services from Debtor's incorporation on July 26, 2002 to Debtor's last payment to Pahl on August 28, 2003 were not reasonably equivalent to the $21,100 in payments received by Pahl. Instead, Foca indicated that he was not able to perform any jobs for Debtor without the assistance of Pahl.

Nine, there is no evidence that Debtor became insolvent shortly after the transfers to Pahl in May, July and August 2003. As stated, for fiscal year 2003, Debtor reported gross profits of $248,230 and ordinary income of $76,251. In addition, Debtor routinely deposited sufficient funds prior to making payments to Pahl. Ten, while substantial debts with Diamond Web occurred between September 2003 through November 2003, Debtor's payments to Pahl occurred between May and August 2003, which is prior, not after, the substantial debts to Diamond Web. Eleven, there is no evidence that Pahl subsequently made a transfer to Foca or another insider.

Therefore, the Court finds that Trustee has not met his burden of proof for "fraud in fact" or actual fraud, pursuant to § 5(a)(1) of the UFTA. Since there was no specific intent to hinder, delay or defraud, the Court also finds in favor of Pahl on his cross-motion for summary judgment as it relates to Trustee's "fraud in fact" or actual fraud claim, pursuant to § 5(a)(1) of the UFTA. As stated, none of the "badges of fraud" have been satisfied to give rise to an inference or presumption of fraud. Thus, the Court grants Pahl's motion for summary judgment on Trustee's actual fraud claim, pursuant to 740 Ill. Comp. Stat. 160/5(a)(1).

B. *740 Ill. Comp. Stat. 160/5(a)(2) ("Fraud-in-law")*

The second applicable state law, 740 Ill. Comp. Stat. 160/5(a)(2), under the Illinois UFTA, provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made

> or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . . .
>
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. 160/5(a)(2).

With constructive fraud or "fraud in law" claims, courts review section 5(a)(2) of the Illinois UFTA. Wachovia Securities, LLC v. Jahelka, 586 F. Supp. 2d 972, 1015 (N.D. Ill. 2008). Establishing fraud in law does not require proof of actual intent to defraud. Id. (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079 (7th Cir.1997); Scholes v. Lehmann, 56 F.3d 750, 757 (7th Cir.1995)). Instead, transfers made for less than reasonably equivalent value, leaving a debtor unable to meet its obligations, are deemed or presumed to be fraudulent. Id. (citing Zeigler, 320 B.R. at 374). Whether "reasonably equivalent value" has been given is generally a question of fact. Id. The movant needs only to prove constructive fraud by a preponderance of the evidence. Id. (citing Bay State Milling Co. v. Martin, 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992)). The distinction between "fraud in fact" and "fraud in law" is derived from whether or not there is any consideration for the conveyance at issue. In re Zeigler, 320 B.R. at 374 (citing Second Nat'l Bank of Robinson v. Jones, 33 N.E.2d 732, 736 (Ill. App. Ct. 1941)).

In order for the movant to establish that a conveyance is fraudulent in law, four elements must be present: (1) the debtor made voluntary transfers; (2) at the time of the transfers, the debtor had incurred obligations elsewhere; (3) the debtor made the transfers without receiving a

reasonably equivalent value in exchange for the transfers; and (4) after the transfers, the debtor failed to retain sufficient property to pay their indebtedness. Id. (citing Lease Resolution Corp., 128 F.3d at 1079).

To determine whether reasonably equivalent value is received under the UFTA, courts consider how that phrase has been construed under the Bankruptcy Code. Wachovia Securities, LLC, 586 F. Supp. 2d 972, 1015 (citing Zeigler, 320 B.R. at 374-75; In re Image Worldwide, Ltd., 139 F.3d 574, 577 (7th Cir.1998)). The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. Id. (citing Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir.1997)). That determination will depend on all the facts of each case. Id. Several factors utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. Id. (citing Zeigler, 320 B.R. at 374-75; Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.), 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999)). "Reasonably equivalent value is measured at the time of the transfer." Id. (citing Zeigler, 320 B.R. at 374-75). Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. Id. (citing Zeigler, 320 B.R. at 374-75).

Trustee has failed to establish that Debtor's transfers to Pahl were fraudulent in law, pursuant to 740 Ill. Comp. Stat. 160/5(a)(2). Debtor had sufficient funds in May, July and August 2003 to pay Pahl for his services. As previously stated, for fiscal year 2003, Debtor reported gross profits of $248,230 and ordinary income of $76,251. In addition, Debtor routinely deposited sufficient funds prior to paying any of Pahl's services in May, July and August 2003. Moreover, Debtor's $200,093.82 in debts to Diamond Web did not occur until September 2003

and November 2003, after payments to Pahl completed. Debtor made voluntary transfers to Pahl, but there is no evidence that, at the time of the transfers, Debtor had incurred obligations elsewhere. There is no evidence that $21,100 for Pahl's services in setting up Debtor's business and quoting print jobs is unreasonable. Trustee argues that Pahl was paid to provide these services as a Diamond Web employee, but, when Pahl worked for Debtor, Foca and Pahl met at Pahl's house during the day, at night and on the weekend so that Pahl could provide specifications and costs during off-hours to Foca for Debtor's jobs. At a minimum, a portion of these services were provided outside of Pahl's employment with Diamond Web and Herlin indicated that Pahl was to perform these services on his own time.

The real issue is that Diamond Web performed over $200,000 in services for Debtor from September through November 2003. After Debtor received payment from customers for these print jobs, Foca had a "falling out" with Herlin and decided to keep over $200,000, rather than pay Diamond Web for its services. Pahl's services and payments, however, occurred prior to these events. Foca's conduct was independent of Pahl's services from July 2002 through August 2003 and there is no evidence that Debtor failed to retain sufficient property to pay indebtedness to others since Debtor's significant debts with Diamond Web did not occur until late 2003.

Therefore, Trustee failed to establish that Debtor's transfers to Pahl were fraudulent in law, pursuant to 740 Ill. Comp. Stat. 160/5(a)(2). Debtor was able to meet its obligations when it made payments to Pahl. In addition, Debtor received Pahl's services from July 2002 through August 2003 to set up and continue Debtor's business. Pahl received $21,100 as payment for these services. While there was no specific payment agreement, Pahl's services and related compensation took place at arm's length with the consent of Diamond Web and Debtor. The Court finds that the transactions were made in the good faith of Debtor and for reasonably

equivalent value. For the reasons stated, the Court finds in favor of Pahl on his cross-motion for summary judgment as it relates to Trustee's "fraud in law" claim, pursuant to § 5(a)(2) of the UFTA. Thus, the Court grants Pahl's motion for summary judgment on Trustee's "fraud in law" claim, pursuant to 740 Ill. Comp. Stat. 160/5(a)(2).

*C. 740 Ill. Comp. Stat. 160/6(a)*

The third applicable state law, 740 Ill. Comp. Stat. 160/6(a), under the Illinois UFTA, provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 Ill. Comp. Stat. 160/6(a).

The elements of a cause of action under § 6(a) of the UFTA are: (1) a transfer was made by the debtor; (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer. Zeigler, 320 B.R. at 374–75 (citing Daley v. Chang (In re Joy Recovery Tech. Corp.), 286 B.R. 54, 77 (Bankr. N.D. Ill. 2002); Daley v. Chang (In re Joy Recovery Tech. Corp.), 257 B.R. 253, 271 (Bankr. N.D. Ill. 2001); In re Liquidation of MedCare HMO, Inc., 689 N.E.2d 374, 380 (Ill. App. Ct. 1997); Falcon v. Thomas, 629 N.E.2d 789, 795 (Ill. App. Ct. 1994)). One difference between sections 160/6 and 160/5 of the UFTA is that section 160/6 includes the requirement that a creditor who has the right to assert some claim must have a claim that arose before the alleged fraudulent transaction. Id. (citing Daley, 286 B.R. at 77). Moreover, intent is not an element under § 160/6(a). Id. (citing Nostalgia Network, Inc. v. Lockwood, 315 F.3d 717, 719 (7th Cir. 2002)).

The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Id. (quoting 740 Ill. Comp. Stat. 160/3(a)). This definition of insolvency mirrors the balance-sheet test for insolvency under the Bankruptcy Code. Id. (citing 11 U.S.C. § 101(32)). In addition, the UFTA provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." Id. (citing 740 Ill. Comp. Stat. 160/3(b)).

Trustee has not met his burden for a cause of action under § 6(a) of the UFTA. Debtor made voluntary transfers to Pahl, but there is no evidence that Debtor made the transfer to Pahl without receiving reasonably equivalent services in exchange for the $21,100. There is no evidence that $21,100 for services in setting up Debtor's business and quoting print jobs is unreasonable. Even if there was evidence that Debtor did not receive reasonably equivalent services, Debtor was not insolvent at the time of the transfers and did not become insolvent as a result of the transfers. For fiscal year 2003, Debtor reported gross profits of $248,230 and ordinary income of $76,251. Therefore, there is no cause of action against Pahl under § 6(a) of the UFTA. For the reasons stated, the Court denies Trustee's motion for summary judgment pursuant to § 6(a) of the UFTA and grants in favor of Pahl on his cross-motion for summary judgment under §6(a) of the UFTA.

D. *740 Ill. Comp. Stat. 160/6(b)*

The fourth applicable state law, 740 Ill. Comp. Stat. 160/6(b), under the Illinois UFTA, provides:

> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

740 Ill. Comp. Stat. 160/6(b).

A fraudulent transfer claim brought under § 160/6(b) of the UFTA is commonly referred to as an insider preference claim. Grochocinski v. Knippen (In re Knippen), 355 B.R. 710, 736 (Bankr. N.D. Ill. 2006) (citing Arachnid, Inc. v. Valley Recreation Prods., Inc., No. 98 C 50282, 2001 WL 1664052, at *6 (N.D. Ill. Dec. 27, 2001)). Pursuant to § 160/6(b), the elements of the cause of action are: (1) the creditor's claim arose before the transfer; (2) the Debtor made the transfer to an insider for an antecedent debt; (3) the Debtor was insolvent at the time of the transfer; and (4) the insider had reasonable cause to believe that the Debtor was insolvent. Id. (citing 740 Ill. Comp. Stat. 160/6(b)).

This is not an insider preference claim. As stated, Pahl was not an insider. Pahl was not a shareholder, officer, director or owner of Debtor. Pahl is not Foca's relative, never had any legal partnership with Foca, and never had any business ventures with Foca. Instead, Pahl was an independent contractor of Debtor and received a 1099-MISC income statement from Debtor for all 2003 payments. In addition, Debtor was not insolvent at the time of the transfers to Pahl. Thus, there is no cause of action for fraudulent transfer claim under § 160/6(b) of the UFTA. Therefore, the Court denies Trustee's motion for summary judgment pursuant to § 6(b) of the UFTA and grants in favor of Pahl on his cross-motion for summary judgment under §6(b) of the UFTA.

## CONCLUSION

For the foregoing reasons, the Court grants Pahl's motion for summary judgment and denies Trustee's motion for summary judgment.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: July 16, 2009

_____
The Honorable Manuel Barbosa
United States Bankruptcy Judge